Benjamin Wm. Mehlman, J.
On the complaint of one Paul Macartney, the defendant was charged with violating article I, section I of the Code of Ordinances of the Village of Ocean Beach, which provides, in part: “No person shall indulge in disorderly, noisy or riotous conduct, or take part in *989 or join, or aid or abet in riotous assemblages, * * * disturbing the peace and quiet of the Village It was stipulated at the trial, and counsel for the defendant consented that the case be tried on the summons in lieu of a sworn information.
This is believed to be the first time this ordinance has been invoked against an establishment in the business zone of the village. Because of its importance to all the residents of the village, this court believes that an extended discussion of the facts, arguments and the law, is justified.
The Village of Ocean Beach is predominantly a Summer, residential community on Fire Island, in Suffolk County. One street running east and west on the northerly side of the village at the Great South Bay, namely, Bayview Walk, is devoted to stores and restaurants. The Bayview Restaurant is located at the northwest corner of Bayview Walk and Denhoff Walk, which runs north and south. Complainant Macartney’s house is on the westerly side of Denhoff Walk about 175 feet south of the restaurant.
It was conceded that on August 15, 1961, at the time of the alleged violation, defendant was in charge of the Bayview Restaurant, a restaurant and bar in the village, which is open to the public; that the restaurant is duly licensed to serve alcoholic beverages; and that Helen Roller, defendant’s mother, is the licensee thereof.
About 12:45 a.m. on Tuesday, August 15, 1961, Macartney, a real estate broker and a long-time resident of the village, called the Ocean Beach Police and complained of noise from the Bayview, which woke him and his wife from sleep. Police Officer Tierney thereupon went to the restaurant and notified defendant of the complaint. Defendant then closed the windows on the south side of the bar in the direction of Macartney’s house. At 1:45 a.m., Macartney again called the police and complained of noise from that restaurant and Officer Tierney went there and issued the summons to defendant on Macartney’s complaint. At that time, Tierney testified, there were at least 25 people in the bar, a juke box was playing and people were singing.
Testimony as to noise was also furnished by Mrs. Macartney (who, incidentally, is President of the Ocean Beach Chamber of Commerce), and by Agnes Downey and Elsie Brinn, that they were awakened by juke box music, singing, and the noise of stomping and handclapping, all of which emanated from the Bayview Restaurant. The witnesses, Downey and Brinn, occupied houses south of the Macartney house, further away from the restaurant. The Macartney and Downey houses are in the *990 business zone; the Brinn house is in the residential zone. It should be noted that, although the business zone extends south of Bayview Walk into the side streets for distances varying from 100 feet to 140 feet, on most of the side streets there are no business establishments and there are many residences in the business zone.
The testimony was clear, and there is no doubt that on the morning of the day and at the time in question, there was ‘ ‘ noisy conduct * * * disturbing the peace and quiet of the Village ” which came from the Bayview Restaurant which was under defendant’s control, and that such conduct constituted a violation of the aforesaid ordinance.
Counsel for defendant, contends, however, (1) the ordinance is invalid because it is inconsistent with subdivision 5 of section 722 of the Penal Law; (2) the noise complained of was reasonable at the time and place and in the circumstances; (3) the offense charged is similar to that of nuisance and residents of a community must endure the discomforts of business establishments which are not used negligently; and (4) the livelihood of the Bayview Restaurant and similar establishments depends on the type of operations at the time and in the circumstances which pertained when the summons was served, and, indeed, the well-being of a large segment of the village depends on this and similar businesses. However, this court finds none of these arguments compelling for the following reasons:
(1) Subdivision 59 of section 89 of the Village Law states the board of trustees of a village “ May * * * enact any ordinances, not inconsistent with existing law which shall be deemed expedient or desirable for * * * the protection of its property, safety and health of its inhabitants, the protection of their property, the preservation of peace and good order ”. Thus, pursuant to that provision it has been held that villages may validly enact ordinances prohibiting public intoxication (People ex rel. Travis v. Thatcher, 190 Misc. 494) and resisting an officer and disorderly conduct (Matter of Brewer v. Watson, 191 Misc. 117), even though there are similar provisions governing such offenses in the Penal Law.
Even more controlling is People v. Jerome (8 Misc 2d 883, affd. without opinion in People v. Bailey (5 N Y 2d 832, 833). In the Court of Appeals defendant Bailey argued that a village ordinance which stated that ‘ ‘ ‘ Any person guilty of the following acts and offenses shall be deemed disorderly persons and guilty of disorderly conduct * * * (b) All persons guilty of noisy, riotous or disorderly conduct to the disturbance of the quiet of said Village. * * * (d) All persons who shall *991 publicly use any profane or obscene language in any street or public place in said Village ’ ”, was invalid to the extent it was inconsistent with section 722 of the Penal Law.
The opinion (pp. 886-887) of the County Court Judge quoted subdivision 59 of section 89 of the Village Law and referred to section 11 (subd. 3, par. [b]) of the Village Home Buie Law (the former applies to all villages while the latter applies only to first-class villages) and said:
“ The scope and breadth of these laws are such as to leave no doubt that the Legislature intended that it is within the province of the village authorities to define disorderly conduct and fix a punishment therefor. To hold otherwise would make meaningless the clear and specific intent of the Legislature to grant powers to villages to determine for themselves the proper exercise of police powers within its jurisdiction for the special welfare and good government of its inhabitants under the conditions existing. If, however, the acts constituting disorderly conduct and the penalties prescribed under Village Law or Village Home Buie Law, are so unreasonably inconsistent with existing law as to be deemed oppressive, arbitrary or contrary to constitutional guarantees, the courts should not hesitate to find them * inconsistent with existing law ’. Surely some reasonable inconsistencies are to be expected, otherwise the necessity for the grant of power of villages to enact laws would not be necessary and the scope and field of Village Law would be entirely subject to legislative action. The latter was never intended.
‘ ‘ It is well to note that the penalties prescribed in the village ordinance are not as severe as those in section 723 of the Penal Law and that otherwise the general import of Village Law is consistent with section 722 of the Penal Law. The court therefore concludes and finds that the ordinance in question is valid ”.
(2) and (3) This is not a prosecution for a public nuisance in violation of section 1530 of the Penal Law which is a misdemeanor, entails severe penalties and has stricter requirements of proof. Consequently the authorities cited by defendant arc not applicable. However, two other cases involving facts similar to this one, both of which involved alleged nuisances, are deserving of particular attention. In People v. Rubenfeld (254 N. V. 245) defendant, the manager of a catering business which occupied a three-story building in the Borough of Manhattan, New York City, was convicted of maintaining a public nuisance. Dances, weddings and other entertainment, one on each story, began in the evening and continued till dawn, disturbing the *992 sleep of neighbors in adjacent apartment houses as far as a block away. The district was a populous one in which many people had homes.
The Court of Appeals affirmed the conviction. Discussing section 1530 of the Penal Law, Cardozo, Ch. J., in a classic opinion said (pp. 247, 249): “ To be reckoned as 1 considerable, ’ the number of persons affected need not be shown to be ‘ very great ’ * * *. Enough that so many are touched by the offense and in ways so indiscriminate and general that the multiplied annoyance may not unreasonably be classified as a wrong to the community. * * * We think the area of this tumult, the range of its disturbing power, is wide enough to bring it within the category of an offense to the community, or so the triers of the facts might find. Here is something more than an interference with a single dwelling or even two or three. Here is tumult so great, if the witnesses are to be credited, as to be a plague to the whole neighborhood.”
In Peters v. Moses (171 Misc. 441, mod. 259 App. Div. 307) outdoor dance music at the Claremont Inn on Riverside Drive, in the Borough of Manhattan, New York City, was enjoined as a nuisance after 11:00 p.m., except Saturday nights and evenings preceding holidays when it could continue until midnight. Residents of surrounding houses claimed that the loud music and excessive noise, needless conduct of the inn’s operators and the boisterous behavior of its patrons disturbed their sleep. Hofstadter, J., in the court below, significantly pointed out (p. 443): “ The patrons of the Claremont Inn have a right to gaiety and to music; and its neighbors have an equal right to the quiet enjoyment of their homes and to sleep. Where does the right of the former end — when does the right of the latter begin? The old rule has found recent expression — bluntly perhaps but graphically — in £ my freedom to swing my arm ends where the other fellow’s nose begins. ’ The question is, at what hour should the open air music stop ? For £ by common consent of civilized man the night is devoted to rest and sleep, and noises which would not be adjudged nuisances, under the circumstances, if made in the daytime, will be declared to be nuisances if made at night and during the hours which are usually devoted by the inhabitants of the neighborhood to sleep.’ ”
This court knows of its own knowledge and will take judicial notice of the fact that the Village of Ocean Beach is not a business or industrial community. ■ It is essentially a Summer, residential community in which business is merely incidental, a convenience, not a necessity. For that further reason, the authorities relied on by defendant are inapplicable.
*993 (4) No testimony was offered nor is there anything in the record of this case to indicate that the livelihood of the Bay-view Restaurant or similar businesses, depends on the type of operation complained of. This restaurant is licensed to sell food and alcoholic beverages. Nothing has been offered to show that it cannot do so in a quiet manner during hours when nearby residents are asleep, particularly after 12:30 a.m. on a Tuesday morning.
The ordinance is clear. It contains no exceptions nor does it exempt this restaurant or any similar business from its application. This court does not have the power to read such an exemption into the ordinance, nor has it the power to determine that what would constitute a violation of its provisions on the part of others does not constitute a violation on the part of bar and restaurant operators. The ordinance must be applied as it has been enacted, equally, upon all persons in the Village of Ocean Beach. “ The courts have frequently reiterated the rule that local authorities entrusted with the regulation of such matters, and not the courts, are primarily the judges of the necessities of local situations, and the courts may only interfere with laws or ordinances passed or regulations adopted in pursuance of the police power where they are so arbitrary as to be palpably and unmistakenly in excess of any reasonable exercise of the authority conferred” (Boord v. Wallander, 195 Misc. 557, 559, mod. 277 App. Div. 253, affd. 302 N. Y. 890).
In view of the foregoing and on the uncontroverted testimony in this case, the defendant is found guilty as charged.